UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

FRANK DEMARTINO and
TADCO CONSTRUCTION CORP.

                    Plaintiffs,          **MEMORANDUM & ORDER**
                                         13-CV-5273 (KAM) (MDG)
  -against-

NEW YORK STATE DEPARTMENT OF LABOR;
DORMITORY AUTHORITY OF THE STATE OF NEW
YORK;
PETER M. RIVERA, Commissioner of the New
York State Department of Labor, in his
official and individual capacities;
JOHN PADULA, in his official and
individual capacities;
JOHN W. SCOTT, in his official and
individual capacities;
DENNIS MONAHAN, in his official and
individual capacities; and
JOHN DOES #1-10, in their official and
individual capacities,

                    Defendants.
-----------------------------------x
**KIYO A. MATSUMOTO, United States District Judge:**

          The New York Labor Law authorizes the Commissioner of

the New York Department of Labor ("DOL") to order the withholding

of payments due a contractor on a public works project if that

contractor fails to pay a prevailing wage to its workers.

Plaintiffs — TADCO Construction Corp. ("TADCO"), a New York public

works contractor, and Frank DeMartino ("DeMartino"), that entity's

owner — filed an amended complaint alleging principally that the

DOL improperly issued multiple withholdings in violation of

plaintiffs' due process rights, thereby depriving them of payment

1

to which they were contractually entitled. Defendants have moved to dismiss the amended complaint. The plaintiffs have moved for this court's recusal and for injunctive relief. For the reasons set forth herein, the plaintiffs' motions are denied and the defendants' motions to dismiss are granted.

## BACKGROUND

### I. New York's Prevailing Wage Law

Before addressing the factual background of the instant case, the court will detail the statutory framework of New York's prevailing wage law. *See* N.Y. Lab. Law § 220 *et seq.* ("§ 220" or the "prevailing wage law"). The prevailing wage law implements Article I, § 17 of the New York Constitution, which provides that no "laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall . . . be paid less than the rate of wages prevailing in the same trade or occupation in the locality."

Under § 220, the wages to be paid in New York on a public project "shall be not less than the prevailing rate of wages." § 220(3)(a). The statute also requires that wage supplements — e.g., benefits — be aligned with prevailing local practices. *See* § 220(3)(b). The "prevailing rates of wages" in New York state are generally determined by the commissioner of the DOL, based on collective bargaining agreements, though the Comptroller of the City of New York City sets the prevailing wage rates in New York

City. *See RI, Inc. v. Gardner*, 523 F. App'x 40, 41 & n.2 (2d Cir. 2013) (citing § 220(5)(a)); *see also* § 220(5)(e). When an employer fails to pay the prevailing wage, the DOL has the authority — either *sua sponte* or upon a worker's complaint — to direct the contracting agency to withhold payment on the public contract pending DOL's investigation and administrative proceedings. *See* § 220(7)–(8); *see also* § 220-b(2)(c).

There are three types of withholdings relevant to this litigation. The first, referred to as "underpayment withholding," requires the DOL — when wages or supplements "appear to be due" — to immediately notify the public contracting agency to withhold funds due on a project sufficient "to satisfy said wages and supplements, including interest and penalty." § 220-b(2)(a)(1). The DOL may then investigate and conduct an administrative hearing. *See* § 220-b(2)(c); *see also* § 220(7)–(8). If underpayment is determined to have occurred, the DOL may order payment by the contractor of the underpaid wages and supplements, including interest and a civil penalty that cannot exceed 25% of the "total amount found to be due." § 220(8). The contractor can seek review of that decision in an Article 78 proceeding in New York state court. *Id.* Pending the final determination, the withheld funds are to be held in trust "for the sole and exclusive benefit of the workers . . . and for payment of any civil penalty." § 220-b(2)(b), (c); *Titan Indem. Co. v. Triborough Bridge & Tunnel Auth.,*

*Inc.*, No. 94-CV-5447, 1996 WL 556988, at *5 (S.D.N.Y. Oct. 10, 1996).

The second type of withholding is referred to as "cross-withholding." In the event that there are insufficient funds still due to the contractor to satisfy the wages, supplements, interest and penalty due on a particular public project, the DOL is authorized to direct a contracting agency to withhold payment due on a separate public project to cover the difference. *See* § 220-b(2)(a)(1).

The third type of withholding is referred to as "records withholding." A public works contractor is required at all times to keep original payrolls "setting forth the names and addresses and showing for each worker, laborer, or mechanic the hours and days worked, the occupations worked, the hourly wage rates paid and the supplements paid or provided." § 220(3-a)(a)(iii). The DOL is empowered to request such payroll records directly from the contractor, which must be turned over within ten days. *See* § 220(3-a)(c). If the contractor fails to provide the requested information within ten days, the DOL "shall, within fifteen days, order the [contracting agency] to immediately withhold" up to 25% of the amount due the contractor under the contract, not to exceed $100,000. *See id.* If the contractor supplies the requested records, however, the DOL must immediately release the funds. *See id.* While the statutory regime contemplates an administrative hearing to

address both an underpayment withholding and a cross-withholding, there is no statutory entitlement to a hearing for a records withholding. *Compare* § 220(7)-(8), *with* § 220(3-a)(a)(iii)-(iv), (c).

## II.  **Factual Background**

The following facts are drawn primarily from the Amended Complaint (ECF No. 29, Amended Complaint ("Am. Compl.")) and, for purposes of this motion, are presumed to be true unless they are conclusory or merely state the elements of a claim.[1] Prior to the commencement of the instant dispute, TADCO and its principal owner

---

[1] In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) — which is the primary dismissal authority employed by both defendants in this district — "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (internal quotation marks and citation omitted). Even if a document is integral, however, it must "be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). The court may also consider "matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

Consideration of matters beyond those just enumerated would require that the court convert the motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Although the ample material outside the pleadings submitted by both parties in this case might suggest the propriety of converting the defense motions here to ones for summary judgment, the court declines to do so. In reaching the conclusion that plaintiffs have failed to state a viable claim in this action, the court disregards all evidence that falls outside the above enumerated categories.

DeMartino (hereinafter, "plaintiffs") were awarded several state and municipal public works contracts. *See TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 257 (E.D.N.Y. 2010). This action arises out of two of those contracts, entered into between plaintiffs and the Dormitory Authority of the State of New York ("DASNY"), "a public benefit corporation responsible for the financing and construction of facilities for State agencies and other entities for which the Legislature has given authorization." *New York State Chapter, Inc. v. New York State Thruway Auth.*, 666 N.E.2d 185, 192 (N.Y. 1996); *see also* N.Y. Pub. Auth. Law § 1675 *et seq.* (DASNY's implementing legislation).

The first of the projects giving rise to this action involved general construction work at the Queens Hospital Center in Queens, New York (the "Queens Hospital Project"). (*See* Am. Compl. at ¶ 12.) Plaintiffs and DASNY entered into a contract for the Queens Hospital Project in September 2005. (*Id.*) Plaintiffs allege that they completed all work on the project. (*Id.* at ¶ 13.) The second relevant project took place at or around the same time as the Queens Hospital Project, and involved the construction of a residence building for the Staten Island Developmental Disabilities Services Office (the "Staten Island Project"). (*Id.* at ¶¶ 14–15.) The Staten Island Project "was beset with construction problems and delays from the outset" and the

relationship between TADCO and DASNY on the project was "marked by rancorous disputes over ongoing payment/funding issues and project management and other issues and became deeply acrimonious and adversarial." (*Id.* at ¶ 15.)

Disputes over payment on these two projects, as well as two others not relevant in this litigation, led TADCO to bring four suits in early January 2007 in New York state court seeking payment for its work. (*Id.* at ¶¶ 13-14 & n.1.) In mid-January 2007, after the four suits were filed, DASNY "unilaterally terminated TADCO" from the Staten Island Project over TADCO's objections. (*Id.* at ¶ 16.) In late January 2007, after TADCO had been terminated from the Staten Island Project, plaintiffs allege that DASNY employee Dennis Monahan ("Monahan") contacted DOL investigator John Padula ("Padula") and "vindictively and maliciously instructed him to open an investigation against TADCO for alleged prevailing wage law violations" on the Queens Hospital Project. (*Id.* at ¶ 17.) Plaintiffs allege that this investigation was entirely baseless and that it was undertaken "in retaliation for and as a tactical response to the lawsuits that TADCO had filed and to intimidate, harass and punish TADCO and its principal Mr. DeMartino." (*Id.* at ¶¶ 18-23.)

According to the Amended Complaint, DOL investigator Padula was effectively "on loan" to DASNY. (*Id.* at ¶ 19.) DASNY paid his salary and benefits, and he worked exclusively for DASNY

pursuant to a "memorandum of understanding" between DASNY and DOL. (*Id.; see also* ECF No. 58, Declaration of Bryan Ha ("Ha Decl."), Ex. E.) Plaintiffs allege that DASNY, through Monahan and others, "controlled this supposedly independent DOL investigator and through him effectively, and unlawfully, exercised the investigatory and prosecutorial powers of the DOL." (Am. Compl. at ¶ 19.)

During the DOL investigation, the DOL issued a notice of records withholding in February 2007 for $62,000 in connection with the Queens Hospital Project. (*Id.* at ¶ 25; *see also* Ha. Decl., Ex. G.) Plaintiffs allege that Padula obtained TADCO's payroll records from DASNY and, "after conducting his investigation, found no evidence of any prevailing wage law violations" on the Queens Hospital Project. (Am. Compl. at ¶ 26.) No hearing was ever held to address the February 2007 records withholding.[2] (*Id.* at ¶ 27.)

---

[2] In January 2008, plaintiffs commenced an action pursuant to 42 U.S.C. § 1983 in the Eastern District of New York against DASNY over a variety of issues related to the Staten Island Project. *See TADCO Const.*, 700 F. Supp. 2d at 256-57, 259. In that action, TADCO asserted a due process violation under § 1983 arising from "purportedly defamatory comments made by DASNY during its termination of the contract with TADCO and from DASNY's failure to pay TADCO promptly for work performed." *Id.* at 257. TADCO also asserted multiple state law breach of contract claims against DASNY. *Id.* DeMartino, in the same action, separately brought federal and state claims of false arrest, malicious prosecution, and abuse of process, claiming that DASNY employees "improperly had him arrested for trespassing at the job site on two separate occasions." *Id.* In March 2010, the district court dismissed the federal § 1983 claims except those arising from DeMartino's arrest. *Id.* at 277. Those claims were ultimately dismissed in September 2014, and the court declined to exercise supplemental jurisdiction over the remaining state law claims. *See TADCO Const. Corp. v. Dormitory Auth. of New York*, No. 08-CV-0073, 2014 WL 4662139, at *7 (E.D.N.Y. Sept. 18, 2014).

In February 2010, DOL issued a second withholding
notice, this time to address purported wage underpayments on the
Staten Island Project. (*Id.* at ¶ 35.) The second withholding was
for approximately $253,000. (Ha Decl., Ex. M.) Plaintiffs allege
that, after issuing the February 2010 withholding notice, Padula
"did virtually nothing in connection with the investigation on
this project." (Am. Compl. at ¶ 35.)

In June 2012, with the DOL proceedings against TADCO
still open, the state court hearing TADCO's suit on the Queens
Hospital Project contract issued a decision granting TADCO partial
summary judgment. (*See* Am. Compl., Ex. A.) The state court rejected
DASNY's assertion that the February 2007 records withholding
ordered by DOL precluded DASNY from recovering on the contract
balance, and therefore ordered DASNY to pay the $21,332.35
remaining balance as well as certain payments approved by DASNY
for work beyond that contemplated by the initial agreement. (*Id.*)
With statutory interest, the state court judgment totaled
$57,378.32. (Ha. Decl., Ex. J.)

Before DASNY had paid plaintiffs pursuant to the
judgment in the Queens Hospital Project suit, plaintiffs allege
that Monahan and other DASNY employees conspired with DOL
investigator Padula to issue another withholding notice. (Am.
Compl. at ¶¶ 32-33.) This third notice, issued in May 2013, was a
cross-withholding for $80,000 in payment on the Queens Hospital

Project due to purported prevailing wage violations on the Staten Island Project. (*Id.; see also* Ha Decl., Ex. L.) Simultaneously, however, DOL released the $62,000 February 2007 records withholding on the Queens Hospital Project and closed that investigation. (Ha Decl., Ex. I; Am. Compl. at ¶ 27.)

Plaintiffs allege that a hearing on the DOL investigation into prevailing wage violations on the Staten Island Project was only scheduled after TADCO sent a letter to DOL in August 2013 complaining that "DOL's practice of issuing withholding notices to deprive TADCO of payment for its work for prolonged periods without any notice or opportunity to be heard violated its due process rights." (*Id.* at ¶ 36.) No hearing was conducted on the remaining Staten Island Project prevailing wage withholding or cross-withholding notices until April 2014. (Am. Compl. at ¶¶ 27, 35–37.) That hearing, which was adjourned to September 2014, was focused on the prevailing wage proceeding regarding the Staten Island Project. (*Id.* at ¶ 37.) Plaintiffs allege that this hearing is a "mere sham" because of "DASNY's active and direct involvement in the DOL proceedings against TADCO and Mr. DeMartino." (*Id.* at ¶ 38.)

## III. **The Instant Action**

Plaintiffs commenced this action in September 2013. (ECF No. 1, Complaint.) Plaintiffs assert five distinct causes of action against: (1) DASNY; (2) the DOL; (3) Peter Rivera, the DOL

commissioner at the time this action was filed; (4) DOL investigator Padula; (5) John W. Scott, a DOL hearing officer; (6) DASNY employee Monahan; and (7) John Does ##1-10 (collectively, "defendants"). The complaint was amended on August 11, 2014.

The claims in the amended complaint are as follows: (1) a substantive due process claim under 42 U.S.C. § 1983 ("§ 1983") arising from the actions of the defendants on the Queens Hospital Project; (2) a procedural due process claim under § 1983 arising chiefly from the delay in conducting a hearing on the Staten Island Project underpayment withholding and the failure to hold a hearing on the Queens Hospital Project records withholding; (3) a conspiracy claim under § 1983 arising from the defendants' alleged collaboration in launching baseless prevailing wage investigations; (4) an abuse of process claim under § 1983 arising from defendants' alleged abuse of the administrative process; and (5) a due process claim under Article I, § 6 of the New York State Constitution.[3] Plaintiffs' five theories of liability do not

_____

[3] Plaintiffs brought a sixth claim styled "Respondeat Superior." (Am. Compl. at ¶¶ 93-97.) The Respondeat Superior claim is dismissed because it is not a stand-alone cause of action but only a theory that establishes the liability of a principal or an employer "for the employee's or agent's wrongful acts committed within the scope of the employment or agency." Black's Law Dictionary (10th ed. 2014); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) ("Respondeat superior is not an independent cause of action, but a theory that must attach to an underlying claim."); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996) ("[T]here being no surviving underlying theory of liability, the respondeat superior claims were also properly dismissed.").

meaningfully distinguish between the defendants. Plaintiffs have sought both equitable relief and damages on each claim. (See Am. Compl. at ¶¶ 56, 72, 80, 89, 92.)

Plaintiffs filed a motion seeking a preliminary injunction as well as this court's recusal, and briefed the issues. (See ECF No. 58, Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction and Recusal ("Pl. Inj. Br.").) The DASNY and DOL defendants separately opposed the motion. (See ECF No. 61, DASNY Opposition to Plaintiff's Motion for Preliminary Injunction ("DASNY Inj. Opp'n"); ECF No. 65, DOL Opposition to Plaintiff's Motion for Preliminary Injunction ("DOL Inj. Opp'n").) Plaintiffs replied in a single brief. (See ECF No. 59, Plaintiffs' Reply in Support of Motion for Preliminary Injunction and Recusal ("Pl. Inj. Reply").)

Both defendants have separately moved to dismiss this action primarily under Rule 12(b)(6), and filed memoranda of law in support of their motions to dismiss. (See ECF No. 70, DASNY Memorandum of Law in Support of Motion to Dismiss ("DASNY Mem."); ECF No. 79, DOL Memorandum of Law in Support of Motion to Dismiss ("DOL Mem.").) Plaintiffs opposed both of the motions (see ECF No. 74, Plaintiffs' Opposition to DASNY Motion to Dismiss ("Pl. Opp'n to DASNY"); ECF No. 84, Plaintiffs' Opposition to DOL Motion to Dismiss ("Pl. Opp'n to DOL")), and the DOL and DASNY defendants replied. (See ECF No. 71, DASNY Reply to Plaintiffs' Opposition

("DASNY Reply"); ECF No. 80, DOL Reply to Plaintiffs' Opposition ("DOL Reply").) Declarations and exhibits were also filed by the parties. The court will refer to these documents when necessary and permissible throughout this opinion.

## MOTION TO DISMISS LEGAL STANDARD

On a motion to dismiss, the court must accept as true the factual allegations in the operative complaint and draw all reasonable inferences in the plaintiffs' favor. *See Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). The court, however, need not apply this principle to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)). The complaint must instead "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4]

---

[4] Plaintiffs' motion papers appear to rely on the long inapplicable "no set of facts" standard (*see* Pl. Opp'n to DOL at 11 ("A party moving for dismissal under Rule 12(b)(6) has a substantial burden to show that it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (citation omitted)); Pl. Opp'n to DASNY at 14 (same)), which was explicitly rejected by the Supreme Court in *Twombly*. *See* 550 U.S. at 562 ("[T]here is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long

## DISCUSSION

The court will consider the claims in the following manner. The court first addresses the recusal motion brought by plaintiffs. Second, the court will address the *Younger* abstention issue raised by the defendants. Third, the court will address the Eleventh Amendment immunity issue raised by the DOL. Fourth, the court will address whether plaintiffs have a protected property interest sufficient to merit due process protection. Fifth, the court will address plaintiffs' procedural due process contentions. Sixth, the court will address plaintiffs' substantive due process allegations. Seventh, the court will address plaintiffs' abuse of process claim. Eighth, the court will address plaintiffs' conspiracy claim. Finally, the court will address plaintiffs' due process claim under the New York State Constitution.[5]

## I. Recusal is Unwarranted

Plaintiffs first move to recuse the court on the basis of 1) partiality and 2) personal bias or prejudice.[6] (Pl. Inj. Br.

_____

enough." (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also Wolff v. Town of Mount Pleasant*, No. 06-CV-3864, 2009 WL 1468620, at *1 (S.D.N.Y. May 26, 2009) (rejecting a magistrate judge's report and recommendation that had employed the more plaintiff-friendly no-set-of-facts standard because the standard, after *Twombly* and *Iqbal*, had "earned its retirement" (internal quotation marks and citation omitted)).

[5] Because the Amended Complaint is dismissed on other grounds, the court does not reach the process issue raised by the DOL, the *Monell* issue raised by DASNY, or the qualified immunity issues raised by both defendants.

[6] It is unclear if plaintiff's recusal request pertains only to plaintiffs' motion for a preliminary injunction, or extends beyond that motion to the entire case (including, of course, defendants' respective

at 26-28; Pl. Inj. Reply at 16.) Defendants contend that there is no valid ground for recusal. (DASNY Inj. Opp'n at 25-27; DOL Inj. Opp'n at 14-15.) Title 28 U.S.C. § 455(a) provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." That section is followed by § 455(b)(1), which states - as relevant here - that a judge "shall also disqualify himself" when he or she "has a personal bias or prejudice concerning a party."

   *A.   Recusal Is Not Warranted Under § 455(a)*

        Under § 455(a), "recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107-08 (2d Cir. 2012) ("The question, as we have put it, is whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" (quoting *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008))).

        The textbook example of this extreme prejudice is a statement made by a judge presiding over a case involving German-

---

motions to dismiss). The court will assume that plaintiffs seek the court's recusal from the entire case.

Americans accused of espionage in World War I. In that case, the judge stated: "One must have a very judicial mind, indeed, not to be prejudiced against the German-Americans in this country. Their hearts are reeking with disloyalty." *Berger v. United States*, 255 U.S. 22, 28 (1921); *see also Ligon v. City of New York*, 736 F.3d 118, 124-27 & n.17 (2d Cir. 2013) (ordering recusal of judge after appellate court found that judge encouraged plaintiffs to bring a separate action, outlined the basis for that potential action, provided her view of its merit, stated how she would rule on a document request in that action, told plaintiffs she would take the action as related to the already-ongoing litigation, and provided multiple interviews with local and national media outlets during which she "describe[d] herself as a jurist who is skeptical of law enforcement"), *vacated in part on other grounds*, 743 F.3d 362 (2d Cir. 2014).

Significantly, opinions formed by a judge on the basis of events occurring during the litigation, "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Examples of judicial behavior that would fail to establish

bias or partiality are "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555-56.

Plaintiffs allege that, during a pre-motion conference to discuss the injunction motion, the court "repeatedly pre-judged the motion," "expressed extreme hostility to the motion," and cut short attempts by counsel to provide the factual and legal bases for the motion. (Ha Decl., at ¶¶ 3-4; Pl. Inj. Br. at 26-28; Pl. Inj. Reply at 16.) Plaintiffs also claim that, during the same conference, the court repeatedly threatened to sanction both plaintiffs and plaintiffs' counsel, "including ordering [plaintiffs] to pay the other side's attorney's fees, if they chose to proceed with the motion and the Court ultimately denie[d] the motion." (Ha. Decl. at ¶ 4.) Plaintiffs' counsel's own perceptions of "extreme hostility" and repeated threats of sanction that chilled plaintiffs' litigation decisions are unsupported by the record. After considering plaintiff's proposed bases for injunctive relief as reflected in counsel's request for a pre-motion conference (ECF No. 42) and his statements during the conference on October 8, 2014, the court expressed its view that the proposed motion appeared unlikely to succeed and more likely to prompt an opposing party to request sanctions. Plaintiffs'

decision to proceed was not chilled as is evident by their decision to pursue the motion.

Even taken as true, these judicial statements do not rise near the level of the statements at issue in *Ligon*, the only case discussed by plaintiffs on this issue, or *Berger*. This court did not discuss the case with the media, provide a litigation strategy roadmap to a party, or level ad hominem attacks at the parties or counsel. *Compare Ligon*, 736 F.3d at 124-27 & n.17; *Berger*, 255 U.S. at 28. Plaintiffs' description of the court's "hostility" is based on their counsel's perception of "expressions of impatience, dissatisfaction, annoyance, and even anger" that the *Liteky* Court determined would not support a motion for recusal. *See* 510 U.S. at 555-56. Further, a judge's statement that sanctions could be awarded is not grounds for recusal. See *Bell v. Johnson*, 404 F.3d 997, 1006 (6th Cir. 2005) (finding insufficient to justify recusal a judge's statement that he was "inclined to award attorney fees" exceeding those normally authorized under the relevant fees statute because this statement merely provided "the parties with additional information that might affect their decisions as to whether it would be appropriate to settle the case"); *Hoeft v. Menos*, 347 F. App'x 225, 228 (7th Cir. 2009) (concluding that the "threat of sanctions" does not merit recusal).

B.   *Recusal is Not Warranted Under § 455(b)(1)*

Plaintiffs do not neatly divide their argument about bias and prejudice under § 455(a) from their argument about partiality under § 455(b)(1). In any case, they fare no better under § 455(b)(1),[7] which as relevant here requires recusal when the judge has "personal bias or prejudice concerning a party." There is a certain degree of inevitable analytical overlap between § 455(a) and § 455(b)(1), as the Supreme Court has observed. *See Liteky*, 510 U.S. at 552 ("As we have described, § 455(a) expands the protection of § 455(b), but duplicates some of its protection as well . . . ."); *see also United States v. Jones*, 294 F. App'x 624, 627 (2d Cir. 2008) (analyzing recusal motion brought pursuant to § 455(a) and § 455(b)(1) under the same general rubric).

Just as under § 455(a), the bar is high for recusal under § 455(b)(1). Indeed, the bar is higher under § 455(b)(1). While even the appearance of partiality would trigger § 455(a), a showing of actual bias is required by § 455(b)(1). *See United States v. Osinowo*, 100 F.3d 942 (2d Cir. 1996) ("Under § 455(b)(1), recusal is mandated only where the district court harbors actual prejudice or bias against a defendant." (citation omitted)); *United States v. El-Gabrowny*, 844 F. Supp. 955, 959 (S.D.N.Y. 1994) ("[Under

---

[7] A sister statute to § 455(b)(1), located at 28 U.S.C. § 144, also requires recusal when a judge "has a personal bias or prejudice either against him or in favor of any adverse party." However, the standard is effectively the same under both statutes. *See* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3542 (3d ed.) ("The substantive standard for disqualification based upon actual bias or prejudice is identical under § 144 and § 455(b)(1).").

§§ 455(b)(1) and 144], what is required is a showing of bias in fact; [§§ 455(b)(1) and 144] do not deal simply with appearances, as does § 455(a)." (citation omitted)). A brief example illustrates the difficulty of showing the requisite degree of actual bias. The Second Circuit recently held that recusal was not necessary despite a district judge's statement during a criminal proceeding in advance of sentencing that the defendant "is a violent person who doesn't deserve to be a free person." *See Jones*, 294 F. App'x at 627.

This court concludes, for substantially the same reasons discussed above in the court's § 455(a) analysis, that the statements attributed to the court by plaintiffs do not merit recusal under § 455(b)(1). Plaintiff's allegation that the court prejudged a motion and threatened sanctions – without more specific facts about the nature of the purported bias or prejudice – does not in any way suggest "personal" bias or prejudice. Further, none of the statements attributed to the court indicate any greater bias than the statements about the "violent" nature of a criminal defendant made by the district judge before sentencing in *Jones*, where recusal was held unwarranted. *See* 294 F. App'x at 627. Since plaintiffs cannot show even the appearance of partiality, it would defy logic to find that they could show actual bias or prejudice on the part of the court.

## II.  *Younger* Abstention

Defendants argue that this court should abstain from exercising jurisdiction over the claims for injunctive relief under *Younger v. Harris*, 401 U.S. 37, 41 (1971), which held that federal courts should generally decline to enjoin state criminal prosecutions. (*See* DASNY Mem. at 10-12; DASNY Reply at 9; DOL Inj. Opp'n at 7-10; DASNY Inj. Opp'n at 7-9.) *Younger* now applies to state administrative proceedings, including DOL proceedings under § 220. See *Doe v. State of Conn., Dep't of Health Servs.*, 75 F.3d 81, 85 (2d Cir. 1996), *as amended on denial of reh'g* (Jan. 30, 1996); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199-202 (2d Cir. 2002) [*"Diamond D"*] (reversing injunction where *Younger* required court to abstain from enjoining § 220 proceeding). Plaintiffs argue, both in their motion for injunctive relief and in opposition to defendants' motions to dismiss, that *Younger* is inapplicable.

*Younger* abstention is required when three elements are met: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has a state court avenue open for review of constitutional claims. *See Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001) (listing requirements under *Younger*); *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105 (2d Cir. 1997) (same). However, a federal court may "nevertheless intervene in a state proceeding upon a showing of

'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond D*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 54). A party seeking to circumvent *Younger* abstention bears the burden of establishing the applicability of one of these exceptions. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982); *Kirschner v. Klemons*, 225 F.3d 227, 235-36 (2d Cir. 2000). Plaintiffs in this case do not argue that the three elements triggering *Younger* abstention are unmet here. Instead, they argue only that the bad faith exception to *Younger* applies. (*See* Pl. Inj. Br. at 16-18.)

The bad faith exception emphasizes the "subjective motivation of the state authority in bringing the proceeding." *See Diamond D*, 282 F.3d at 199. "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution — even when the violations of constitutional rights are egregious — will not warrant the application of the bad faith exception." *Id.* at 199. Essentially, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994). In *Cullen*, the Second Circuit identified circumstances in which the bad faith exception might apply. *Id.* at 103-04. There, a teacher was disciplined in a state administrative proceeding after distributing pamphlets opposing the re-election of certain school board members. *See id.* at 99-101. The Second Circuit affirmed the district court's

injunction against the school district, concluding that the district court's findings of a "past history of personal conflict" between the teacher and the school district as well as the "strictly ad hominem" manner in which the district had pursued the teacher, imposed a chilling effect on his First Amendment rights. *See id.* at 104. The Second Circuit held that the bad faith exception to *Younger* abstention was applicable. *Id.*

The Second Circuit reversed an injunction by the district court and distinguished *Cullen* in the later *Diamond D* decision, finding that the bad faith exception to the application of *Younger* abstention did not apply. *See* 282 F.3d at 201. Like this case, *Diamond D* involved a § 220 DOL proceeding in which the DOL had ordered a withholding. *Id.* at 196. In *Diamond D*, the district court had enjoined a DOL investigation under § 220 after finding that the DOL had delayed the progress of an investigation and withheld funds on the basis of an arbitrary investigation. *See* 282 F.3d at 193. The district court found that "the DOL [had] evidenced an intent to harass and coerce [the contractor] into paying the underpayment withholdings, regardless of whether the withholdings [had] any basis in fact." *Id.* at 200 (internal quotation marks and citation omitted). The Second Circuit acknowledged the district court's finding that substantial withholdings — totaling approximately $1.4 million — were calculated by a DOL investigator based on exceptionally faulty

assumptions, at least one of which was employed by an investigator "fully knowing that it was wrong." *Id.* at 194-96. Further, the withholding placed the contractor in an "untenable financial position" and created a "cash crisis" preventing the contractor from obtaining new work because its insurer would not bond future projects until the withholdings were resolved. *See id.* at 196.

Nonetheless, the Second Circuit vacated the injunction, finding that the bad faith exception to the application of *Younger* abstention did not apply. *See id.* at 198-202. The Second Circuit concluded that these facts could not establish that the DOL's proceedings "were brought with an intent to harass or any other illegitimate motive." *Id.* at 200. Instead, the court held that the DOL's investigation appeared to be "motivated principally by a straightforward application of the laws of New York." *Id.* at 201 (internal quotation marks and citation omitted); *see also Astoria Gen. Contracting Corp. v. Office of Comptroller of City of New York*, No. 15-CV-1782, 2016 WL 369237, at *9 (S.D.N.Y. Jan. 27, 2016) (refusing to find bad faith exception applicable, and applying *Younger* abstention to deny request to enjoin § 220 proceeding over plaintiffs' objections that the comptroller and contracting agency conspired to violate their due process rights, targeted them due to an earlier failed prevailing wage enforcement investigation, and manufactured employee wage complaints).

In this case, the ongoing DOL administrative proceeding is exclusively focused on underpayments for the Staten Island Project. (Am. Compl. at ¶ 37.) The inquiry, for this court, is whether that administrative proceeding — as opposed to the Queens Hospital Project investigation, which is now closed and never led to a hearing (*id.* at ¶¶ 29, 49) — was initiated in bad faith with a retaliatory motive. There are very few detailed factual allegations in the Amended Complaint about the initiation of the Staten Island Project investigation. Plaintiffs argue, in a conclusory fashion, that the February 2010 withholding notice on the Staten Island Project "was issued based on purported findings of wage underpayments made unilaterally by Mr. Padula." (*Id.* at ¶ 35.) Plaintiffs also allege that Monahan and others at DASNY "communicated regularly with Mr. Padula regarding the investigation on the Staten Island project" and that Monahan and Padula maliciously contacted an assistant district attorney to bring criminal charges against plaintiffs for alleged labor law violations. (*Id.* at ¶ 33.)

These allegations closely resemble those at issue in *Diamond D*. In *Diamond D*, as here, the DOL's withholding was alleged to be baseless. *See* 282 F.3d at 200. In *Diamond D*, as in this case, the plaintiffs alleged that the DOL sought to pressure them into paying baseless withholdings. *See id.* In many ways, the facts in *Diamond D* favored the plaintiff-contractor more than the facts

here. For example, there are no allegations here, unlike in *Diamond D*, that the plaintiffs were on the verge of financial insolvency due to the withholdings. *See id.* at 196. Further, the assumptions relied upon by the DOL investigator in *Diamond D* — who directed withholdings of $1.4 million, an amount far greater than the amount withheld here — were patently and facially erroneous. *See id.* at 194-96 (describing the assumptions as "inscrutable"). To the extent that plaintiffs argue that their allegations of subjective malice in the DOL's initiation of the Staten Island Project investigation serve to distinguish *Diamond D*, the court concludes that these allegations are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith. Therefore, *Younger* abstention is appropriate to the extent that plaintiffs seek injunctive relief. Plaintiffs have not shown that the DOL has "no reasonable expectation of obtaining a favorable outcome." *Cullen*, 18 F.3d at 103.

Principles of abstention are inappropriate, however, "where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 102 (2d Cir. 2001) (vacating dismissal of a claim for money damages where district court had abstained, inter alia, under *Younger*). In this case, each of plaintiffs' causes of action seeks both equitable relief and damages. (*See* Am. Compl. at ¶¶ 56, 72, 80, 89, 92.) Because plaintiffs have sought injunctive relief, which is denied, and

26

monetary damages, the court will proceed to analyze the validity of their damages claims.

## III. **Eleventh Amendment Immunity**

The state defendants contend that the Eleventh Amendment bars damages claims against the DOL and the other state defendants in their official capacities.

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. The amendment was interpreted long ago, despite its language, to extend to suits against a state by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890). The amendment "provides a state, as well as its agencies and its officials acting in their official capacities, with protection from suits in federal court for damages for past wrongs." *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir. 1991); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974) ("[T]he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." (citation omitted)).

In this case, plaintiffs do not contend that the DOL or the other state defendants (in their official capacities) can be

liable for damages. Instead, they first argue that the Eleventh Amendment does not bar injunctive relief against the state defendants. (Pl. Opp'n to DOL at 2-3.) This point, however, is undisputed by the state defendants. (DOL Reply at 1 (acknowledging that "the Amendment does not bar injunctive relief").) Plaintiffs also argue that the Eleventh Amendment does not bar them from recouping funds frozen due to the DOL withholding notices, since those funds are held by DASNY (which is not an arm of the state, see *TADCO Const.*, 700 F. Supp. 2d at 262 n.2 (collecting cases)). (Pl. Opp'n to DOL at 3.) The state defendants do not dispute this point. (DOL Reply at 1-2.)

Plaintiffs are essentially talking past the state defendants on the Eleventh Amendment issue. Plaintiffs concede that neither the DOL nor the other state defendants (in their official capacities) can be held liable for damages for past acts. Accordingly, the court concludes that sovereign immunity under the Eleventh Amendment precludes plaintiffs from recovering damages against the DOL or the other state defendants in their official capacities.

## IV. <u>Federal Claims</u>

The court next considers plaintiffs' four federal claims under § 1983 against the individual state defendants in their individual capacities as well as the DASNY defendants alleging: (1) a procedural due process violation; (2) a substantive due

28

process violation; (3) an abuse of process violation; and (4) a conspiracy. The procedural and substantive due process claims require that the court first evaluate whether plaintiffs have alleged a deprivation of a protected property interest sufficient to support their due process claims. Next, the court will consider the substance of plaintiffs' federal claims.[8]

A.   *Property Interest*

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." Section 1983, in turn, provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Defendants contend that plaintiffs fail to allege a property interest

---

[8] Plaintiffs' amended complaint repeatedly alleges violations of the Fifth Amendment and the Fourteenth Amendment. (Am. Compl. at ¶¶ 42, 57, 73, 81.) However, plaintiffs only name state government bodies and officials in their complaint. No federal government officials appear to be implicated in this action. Because the Fifth Amendment's Due Process Clause constrains only the actions of the federal government, any claims under that clause must be dismissed. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Because Plaintiff's lawsuit does not allege any deprivation of his rights by the federal government, any due process claim he has against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment."); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials. Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." (citations omitted)).

sufficient to state a due process claim. (DOL Mem. at 21-22; DASNY Mem. at 13-15; DASNY Reply at 2-3.)

"Governmental action may be challenged as a violation of due process only when it may be shown that it deprives a litigant of a property or a liberty interest." *Gen. Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991); *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) ("The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution."). Because plaintiffs have argued only a violation of a property interest and not a liberty interest (*see* Pl. Opp'n to DOL at 17-18; Pl. Opp'n to DASNY at 19-20),[9] the court's analysis focuses exclusively on the nature of the purported property interest.

The court must address plaintiffs' argument that they need not possess a protected property or liberty interest to pursue a substantive due process claim. (*See* Pl. Opp'n to DOL at 17

---

[9] Plaintiffs did, however, unsuccessfully assert a liberty interest in earlier, related litigation. *See TADCO Const.*, 700 F. Supp. 2d at 267 ("TADCO has failed to adequately allege the stigma required to establish a stigma-plus liberty interest deserving of due process protection."). As noted, they appropriately have not renewed their assertion of a claim for deprivation of a liberty interest here.

("[P]laintiffs' claim may be construed as a generalized claim for violation of substantive due process which is not dependent on the existence of any property interest." (internal quotation marks and citation omitted)); Pl. Opp'n to DASNY at 17 (same).) Plaintiffs inexplicably rely on language in *Kaluczky v. City of White Plains*, which clarified that where a § 1983 plaintiff alleges a "cause of action protected by an explicit textual source of the Constitution, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing that claim." 57 F.3d 202, 211 (2d Cir. 1995) (internal quotation marks and citation omitted). Thus, *Kaluczky* stands for the uncontroversial proposition that a plaintiff cannot rely on Fifth or Fourteenth Amendment substantive due process protection when her claim, in actuality, derives from a different specific constitutional provision or amendment. *See Albright v. Oliver*, 510 U.S. 266, 273-75 (1994) (rejecting petitioner's attempt to recharacterize a claim to be free from prosecution without probable cause under the Fourth Amendment as a substantive due process claim).

*Kaluczky* in no way suggests that a plaintiff need not allege a protected property or liberty interest to pursue a substantive due process claim. Courts have consistently held otherwise. *See, e.g.*, *Knox v. Town of Southeast*, 599 F. App'x 411, 413 (2d Cir. 2015) ("To establish a substantive due process claim, a plaintiff must demonstrate a deprivation of a protected property

interest . . . ."); *Goodspeed Airport v. E. Haddam Land Trust*, *Inc.*, 166 F. App'x 506, 508 (2d Cir. 2006) ("To prevail on a procedural or substantive due process claim, the plaintiff must first identify a liberty or property interest protected by the Constitution of which the state deprived him or her." (citation omitted)).[10]

The court turns next to the nature of the purported property interest at stake here. In order to maintain a protected property interest in a benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate

_____

[10] There is one further threshold issue. Defendants argue that issue preclusion prevents plaintiffs from "relitigating whether TADCO has a constitutionally protected property interest in payment" on the Staten Island Project. (DASNY Mem. at 14 & n.2; *see also* DOL Mem. at 22.) In plaintiffs' earlier federal action, Judge Trager concluded that "TADCO's 'property interest' is in reality a breach of contract claim against DASNY for failure to pay it money owed under the contract, which should be adjudicated as such under relevant New York law." *TADCO Const.*, 700 F. Supp. 2d at 264. Issue preclusion — or collateral estoppel — requires, however, that "the issues in both proceedings be the same." *Levy v. Kosher Overseers Ass'n of Am., Inc.*, 104 F.3d 38, 43 (2d Cir. 1997) (internal quotation marks and citation omitted). In the earlier action, the issue was whether TADCO had a "property interest in its right to timely payment, which it claims DASNY violated by its delay in processing TADCO's charge orders and by its failure to pay for work performed by TADCO." 700 F. Supp. 2d at 262. The issues in this case are somewhat more complicated. First, a state court judgment has issued since Judge Trager's decision that may have nudged plaintiffs' entitlement — at least with respect to the Queens Hospital Project funds at issue in the judgment — over the protected property interest threshold. (*See* Ha Decl., Ex. J.) Second, and perhaps more fundamentally, the failure to pay plaintiffs in this case is related not to a dispute about contractual performance, as in the prior proceeding, *see TADCO Const.*, 700 F. Supp. 2d at 259, 262-64, but instead to DOL withholdings based on purported prevailing wage violations. The issues in this action are therefore sufficiently distinct to prevent the application of issue preclusion.

claim of entitlement to it." *Roth*, 408 U.S. at 577. Property interests derive not from the Constitution, but from "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Gen. Elec. Co.*, 936 F.2d at 1453 (internal quotation marks and citation omitted). Although the "underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks, alterations, and citation omitted).

Plaintiffs contend that they have a right to timely payment for work performed under a contract with a state agency. (Pl. Opp'n to DOL at 18-19 (citing *Gen. Elec.*, 936 F.2d at 1453); Pl. Opp'n to DASNY at 19-20 (same).) DASNY argues that plaintiffs "must show that their rights to the funds in question are superior to [those] of the affected employees on whose behalf DOL is conducting its Labor Law investigation." (DASNY Mem. at 15.) DOL's argument is substantially similar. DOL maintains that plaintiffs have no protected property interest unless and until the DOL "finally determines [that] the contractor has paid the required wage." (DOL Mem. at 21.)

This dispute plays out against the backdrop of a considerable quantity of caselaw favoring a finding that the plaintiffs have at least some type of protected property interest. In *General Electric Co.*, for example, the New York DOL ordered the Long Island Railroad to withhold funds that would otherwise have been due to General Electric (a private contractor) for its work servicing and repairing electric transformers. *See* 936 F.2d at 1451. The DOL ordered the withholding after concluding that General Electric had underpaid its workers. *Id.* General Electric brought an action arguing that its due process rights were violated because the prevailing wage law (N.Y. Lab. Law § 220) unconstitutionally delegated authority to unions to set prevailing wage rates. *Id.* at 1451-52. In evaluating whether General Electric could sustain its due process claim, the court explained:

> [i]t is well established that a contractor has a right to timely payment for work it performs under a contract with a state agency, and that such right is a property interest protected by the due process clause. Here GE's property interest is implicit in § 220 itself, which both creates an entitlement to payment of the full contract price, except if a contractor fails to pay the determined prevailing rates, § 220(8), and provides for a hearing to determine if cause exists to deprive a contractor of the full contract price. Thus, state law supports GE's claim of entitlement.

*Id.* at 1453 (citations omitted).

Similarly, in *Signet Construction Corp. v. Borg*, 775 F.2d 486, 487-88 (2d Cir. 1985), a New York City Board of Education contractor failed to perform certain work in accordance with

34

various contracts it had been awarded. The board determined that the contractor was in default, and withheld payments that the contractor believed were due for work performed. *See id.* at 488–89. The contractor then brought a § 1983 action claiming that the board, "by wrongfully withholding money due [to the contractor] for work performed, deprived it of the cash flow needed to complete performance of its contracts" with the board and drove it out of business. *Id.* at 488. Although the *Signet* court concluded that the contractor had not been denied due process, the court determined that the contractor maintained a protected property interest in payment on the contract. *See id.* at 489 ("It is not disputed by the parties that a contractor's right to timely payment for work done under its contract with a state agency constitutes a property interest, deprivation of which by the Board without procedural due process would violate its Fourteenth Amendment rights." (citations omitted)).

However, the Second Circuit later characterized the above-quoted statement from *Signet* as *dicta*, and held that "a public contractor has no property interest, grounded in New York law, to prompt payment pending an investigation when the result of that very investigation will determine whether the City tenders payment or declares the contract void, at least where the delay does not exceed the reasonable delay contemplated by New York law." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 969 (2d Cir. 1988); *see*

*also Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch.*
*Const. Auth.*, 23 F.3d 636, 641 (2d Cir. 1994) (same).

A subsequent panel sought to square these apparently
irreconcilable decisions. *See Terminate Control Corp. v. Horowitz*,
28 F.3d 1335, 1351 (2d Cir. 1994). The *Terminate Control* court
drew a distinction between a right to immediate payment pending an
administrative determination that would resolve a contractual
entitlement issue and a right "in ultimately being paid for work
properly performed" under a state contract. *Id.* at 1351-52. A
contractor lacks the former right, but does possess the latter
one. *Id.* The *Terminate Control* court — addressing a private
contractor-plaintiff's claim of a property right in contractual
payment pending an administrative determination about whether the
contractor had defaulted — assumed the contractor's right in
ultimately being paid for work properly performed and went on to
analyze whether the plaintiff's due process rights had been
violated. *Id.* at 1351-52 & n.9. The court concluded that there had
been no due process violation. *Id.* at 1352. The distinction drawn
in *Terminate Control* provides some guidance in the instant case.

Plaintiffs' allegations about the nature of their
protected property interest are unclear. In their briefing, they
refer to the June 2012 state court judgment as the source of their
property right. (Pl. Opp'n to DOL at 18 ("There can be no question
that plaintiffs have a protected property interest in collecting

36

on this judgment."); Pl. Opp'n to DASNY at 19 (same).) If this were the sole source of their substantive property right, due process protection would extend no further than the approximately $57,000 set aside by DASNY as a result of that judgment. (*See* Ha Decl., Ex. H.) Plaintiffs' complaint, however, proposes a broader property interest. With respect to their procedural due process claim, plaintiffs allege that they have a "constitutionally-protected property interest" both in "receiving timely payment on the TADCO judgment" as well as in "receiving timely payment for . . . work on the Queens Hospital project, the Staten Island project, and other DASNY projects." (Am. Compl. at ¶¶ 58–59.) Plaintiffs do not identify a specific property interest in their substantive due process cause of action. (*See* Am. Compl. at ¶¶ 42–56.) However, the court will assume for purposes of this decision that the nature of the purported interest is the same for each of the due process claims.[11]

Although the Second Circuit's decisions have been somewhat unclear about the nature of a contractor's protected property interest in payment, this court follows the reasoning of the *Terminate Control* court and finds that plaintiffs likely do maintain some protected property interest in "ultimately being

---

[11] *See* DOL Mem. at 21 n.27 ("[T]he constitutional claims alleged depend on the existence of a protected interest, which here can only be the interest in payment.")

paid for work properly performed" under its contract with DASNY, but not a right to prompt payment or an advance hearing. *See* 28 F.3d at 1352 (finding a protected interest in payment for work performed and analyzing whether due process was satisfied by available state-law remedies). Plaintiffs here stand in essentially the same position as the contractors in *General Electric*, where the Second Circuit — relying on *Signet*, 775 F.2d at 489 — held that a contractor has a protected property interest in "timely payment for work it performs under a contract with a state agency." 936 F.2d at 1453. Both the contractor-plaintiff in *General Electric* and the plaintiffs here claimed that the DOL improperly withheld money for purported violations of the prevailing wage law. *Id.* at 1451. In *General Electric*, as in the instant case, the validity of that withholding was in question. *See id.* at 1456-59 (permitting General Electric to pursue its claim that the DOL had unconstitutionally delegated authority to set the prevailing wage rates). The court cannot find that plaintiffs lack *any* protected property interest without running afoul of *General Electric*.

Both defendants cite cases on the issue of whether plaintiffs maintain a protected property interest that either assume such an interest or recognize one directly. In *Lujan v. G & G Fire Sprinklers Inc.*, for example, the Supreme Court — in dismissing a due process claim of a public contractor whose payment

was withheld pursuant to a state prevailing wage law similar to the state law at issue in this case — assumed without deciding that the contractor maintained "a property interest . . . in its claim for payment under its contracts." 532 U.S. 189, 195 (2001) (citation omitted). Similarly, in *Leed Indus. Inc. v. New York State Dep't of Labor*, the New York DOL conceded that a roofing company — which had performed work for several school districts, and had money withheld by the DOL due to purported prevailing wage violations — had a property interest in "ultimately getting paid for work properly performed." No. 09-CV-9456, 2010 WL 882992, at *1, *3 (S.D.N.Y. Mar. 8, 2010).

Having concluded that the plaintiffs likely maintain some protected property interest, the court turns next to plaintiffs' procedural and then substantive due process claims.

B.    *Procedural Due Process Under § 1983*

The gravamen of plaintiffs' procedural due process claim is that the post-termination hearing to address withholdings from the Staten Island Project was not timely. The opportunity to be heard is a fundamental component of due process, *see Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), and that opportunity must "be granted at a meaningful time." *Id.; see also Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 547 (1985) (same); *Barry v. Barchi*, 443 U.S. 55, 66 (1979) (same). "At some point, a delay in the post-

termination hearing would become a constitutional violation."
*Loudermill*, 470 U.S. at 547.

The Supreme Court has drawn no firm line delineating when a hearing is so belated that it violates an individual's due process rights. For example, the *Loudermill* Court found no due process violation arising from a school security guard-plaintiff's nine-month wait for a post-termination administrative decision upholding his dismissal for dishonesty in filling out a job application. *See* 470 U.S. at 535-37, 546-47. The court noted that the delay "stemmed in part from the thoroughness of the procedures." *Id.* at 547. In *Barry*, by contrast, a horse trainer's license was suspended for 15 days pursuant to regulations dictating suspension where a postrace test of a race horse revealed the presence of drugs. *See* 443 U.S. 57-61. The statute at issue specified no time for a post-termination hearing. *Id.* at 61, 66. The court determined that trainers "subject to relatively brief suspensions would have no opportunity to put the State to its proof until they have suffered the full penalty imposed. . . . Once suspension has been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount." *Id.* at 66. The absence of a prompt post-suspension hearing, the court held, violated the trainer's due process rights. *Id.*

At the outset, the court must determine the precise period that plaintiffs waited for a hearing. Plaintiffs repeatedly

allege that they suffered a seven-year delay before a hearing was conducted on the Staten Island Project withholdings. (Pl. Opp'n to DOL at 20; Pl. Opp'n to DASNY at 21; Am. Compl. at ¶¶ 37, 39, 66–68.) Plaintiffs appear to base the seven-year figure on the DOL's issuance of a records withholding notice in February 2007 for work associated with the Queens Hospital Project. Plaintiffs complain that they were never accorded a hearing for that records withholding. (E.g., Pl. Opp'n to DOL at 21 ("[T]he procedural due process claim encompasses not only the delay in conducting the hearing in connection with the Staten Island project but also the failure to conduct a hearing in connection with the Queens Hospital Project."); Am. Compl. at ¶ 66 (complaining that delay in hearing for the records withholding violated due process).)

Although no hearing was apparently ever conducted on the DOL records withholding, which was not released until May 2013 (Am. Compl. at ¶¶ 27, 29; Ha Decl., Ex. I), the statutory scheme does not contemplate a hearing for a records withholding. *Compare* § 220(7)-(8) (providing a hearing to determine "whether the contractor or a subcontractor has paid the prevailing rate of wages and prevailing practices for supplements"), *with* § 220(3-a)(a)(iii)-(iv), (c) (providing payroll record-keeping obligations and requiring withholding, with no mention of a hearing, where contractor fails to respond to a records request). This is likely because state contractors are obligated at all times to keep

41

payroll records and turn them over whenever they are requested by a fiscal officer. *See* § 220(3-a)(a)(iii), (c). Plaintiffs do not, anywhere in their Amended Complaint or motion papers, indicate that they turned over the requested records. Had they done so, the DOL would have been *required* to release the withholding. See § 220(3-a)(c) ("Said amount withheld *shall be immediately released* upon receipt by the department of jurisdiction of a notice from the fiscal officer indicating that the request for records had been satisfied." (emphasis added)). The court, therefore, cannot find — for purposes of evaluating the timeliness of the hearing — that the clock started ticking when the DOL issued the records withholding notices in February 2007.

Instead, any entitlement to a hearing for the Staten Island Project prevailing wage withholdings — which are at the core of the procedural due process claim asserted by plaintiffs (see Am. Compl. at ¶¶ 67-68), and are the basis for all remaining withheld funds at issue in this litigation[12] — could not have arisen before February 2010, when the DOL issued its first wage underpayment withholding for the Staten Island Project.[13] Thus, for

---

[12] The cross-withholding on the Queens Hospital Project is dependent on the validity of the underpayment withholding on the Staten Island Project. (*See* Ha Decl., Ex. L (describing May 2013 withholding as a "cross-withholding" to address underpayment on the Staten Island Project); § 200-b(2)(a)(1) (providing statutory basis for cross-withholding).)

[13] Plaintiffs appear alternatively to propose that their entitlement to a hearing arose when the DOL's prevailing wage investigation began, allegedly in the vicinity of January 2007. (Am. Compl. at ¶ 22.) The

42

purposes of evaluating the timeliness of the hearing, the court concludes that any entitlement to a hearing on the Staten Island Project withholdings arose in February 2010. The hearing on the Staten Island Project withholdings was commenced in April 2014 and was adjourned to September 2014. (Am. Compl. at ¶ 37.) The question, then, is whether an approximately four-year delay in a hearing for a prevailing wage withholding violates due process.

Plaintiffs' arguments about delay in this case run headlong into at least three significant barriers, as discussed below. First, there is a total absence of caselaw finding a due process violation for the delay of a § 220 prevailing wage withholding hearing. Despite a fairly extensive universe of caselaw addressing § 220, plaintiffs have not cited, and the court has not uncovered, any precedent — either in the New York state courts or the New York federal courts — finding a due process violation based on a delay of a § 220 hearing. Multiple cases, instead, have held or strongly implied that similar delays do not run afoul of due process. Second, the Supreme Court has held that a multi-year delay in adjudicating a prevailing wage withholding is not constitutionally problematic. Finally, the Second Circuit has consistently held that the availability of state remedies —

---

problem with this theory is that it would indicate that even a preliminary prevailing wage inquiry or investigation triggers a hearing right, before a decision is made with respect to whether a violation occurred or a withholding notice is issued. Such a result would be unworkable, unreasonable, and illogical.

from mandamus relief to an Article 78 proceeding — satisfies due process in the context of a public contract dispute. The court will address these obstacles to plaintiffs' procedural due process claim in turn.

## 1. No Precedent Finding Due Process Violation From Delay in § 220 Proceeding

First, as noted above, plaintiffs do not cite to any case finding a due process violation rooted in the delay of a hearing to address a prevailing wage withholding under § 220. New York courts have instead found that such delays in the context of § 220 hearings are not inherently problematic. *See Giant Supply Corp. v. City of New York*, 670 N.Y.S.2d 29 (N.Y. App. Div. 1998) (finding that delay of over five years in conducting § 220(8) hearing did not prejudice a contractor in light of the employees' countervailing interest); *M. Passucci Gen. Const. Co. v. Hudacs*, 633 N.Y.S.2d 903, 904-05 (N.Y. App. Div. 1995) ("We reject the contention of petitioner that the three-year delay in conducting the [§ 220(8)] hearing deprived it of due process."); *see also Pascazi v. Gardner*, 966 N.Y.S.2d 528, 531 (N.Y. App. Div. 2013) (refusing to find delay in conducting § 220(8) hearing unreasonable where contractor-petitioner failed to produce certain payroll records and commenced ancillary proceedings); *D & D Mason Contractors, Inc. v. Smith*, 917 N.Y.S.2d 283, 285 (N.Y. App. Div. 2011) (holding, in the context of § 220(8) hearing, that "[l]apse

of time in rendering an administrative determination, standing alone, does not constitute prejudice as a matter of law").

While the absence of any authority finding a due process violation for a § 220 delay does not dispose of this claim, it does expose the novelty of plaintiffs' argument. Plaintiffs here have pointed to no unique, substantial prejudice that suffices to distinguish the aforementioned authority. In their briefing, in fact, plaintiffs have entirely failed to grapple with this adverse caselaw.

Plaintiffs point to provisions in the New York labor law indicating that labor investigations should be conducted within six months and that hearings are to be "expeditiously conducted." (Am. Compl. at ¶ 39 (citing § 220(7), (8).) Section 220(7) of the labor code states that the DOL:

> shall make either an order, determination or any other disposition, including but not limited to an agreed upon settlement and/or stipulation, within six months from the date of filing of [a] verified complaint, and where a compliance investigation is made without the filing of a verified complaint, within six months from the date a compliance investigation is initiated by [the DOL].

Section 220(8) contains a complementary, albeit more malleable, provision requiring prevailing wage withholding hearings to be conducted "expeditiously."

As plaintiffs must surely realize, since it was discussed in the New York state court decision accompanying the June 2012 judgment quoted in their complaint (*see* Am. Compl. at

¶ 28; *see also id.*, Ex. A; Ha. Decl., Ex. H), the specific time limit in § 220(7) is "directory," not "mandatory." *Giant Supply*, 670 N.Y.S.2d at 29; *Matter of Moveway Transfer & Storage, Inc. v Thompson*, 2008 N.Y. Misc. LEXIS 10764, at *22-23 (N.Y. Sup. Ct. Dec. 19, 2008) ("[T]he limitations period in Labor Law § 220(7) is directory rather than mandatory. Therefore, the Comptroller's failure to complete the investigation within six months would not have been fatal to the investigation." (citation omitted)). Even if the time limits were mandatory, not every state law violation translates into a due process claim. *See Screws v. United States*, 325 U.S. 91, 109 (1945) ("Violation of local law does not necessarily mean that federal rights have been invaded. . . . It is only state action of a particular character that is prohibited by the Fourteenth Amendment . . . ." (internal quotation marks and citation omitted)); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983." (citation omitted)). Although the time limits in § 220 are not irrelevant to the due process calculus, they do not set up federal due process boundaries.

## 2. **Lujan v. G & G Fire Sprinklers Inc.**

The second barrier to plaintiffs' relief is the Supreme Court's decision in *Lujan v. G & G Fire Sprinklers Inc.*, which refused relief to plaintiffs on largely similar facts. *See*   532 U.S. at 191, 197. *Lujan*, which involved a California prevailing

46

wage statutory scheme strikingly similar to New York's,[14] *see id.*
at 191-92, is in many ways determinative of plaintiffs' delay
claim. California's prevailing wage law at the time, unlike § 220
in this case, provided no hearing either before or after a payment
withholding. *Id.* at 191. Instead, a contractor's "exclusive
remedy" was a suit "on the contract for alleged breach thereof in
not making . . . payment." *Id.* at 192. In *Lujan*, the California
Division of Labor Standards Enforcement, which supervised
compliance with the law, determined that a public works
subcontractor had failed to pay the prevailing wage on three public
works projects. *Id.* at 191, 193. The subcontractor's payments on
the project were thereafter withheld, after which the
subcontractor sued a group of public bodies and officials. *Id.* at
191-93. The subcontractor claimed that the complete absence of any
hearing, either before or after the withholding, violated due
process. *Id.* at 193.

    The Supreme Court unanimously disagreed. *Id.* at 191,
199. Assuming that the subcontractor had a property interest "in
its claim for payment under its contracts," the Court concluded

---

[14] As of 2010, at least 31 states and the District of Columbia maintain
prevailing wage laws, though they vary greatly in their protections. *See*
George C. Leef, *Prevailing Wage Laws: Public Interest or Special Interest
Legislation*, 30 *Cato Journal* 1, 139-40 (2010); *see also* Wage and Hour
Division, Department of Labor, *Dollar Threshold Amount for Contract
Coverage Under State Prevailing Wage* Laws (2016), *available at*
http://www.dol.gov/whd/state/dollar.htm (indicating that 32 states have
prevailing wage laws). The federal government also has a prevailing wage
statute: the Davis-Bacon Act. *See* 40 U.S.C. § 3141 *et seq.*

that whatever property right the subcontractor had could "be fully protected by an ordinary breach-of-contract suit" like the one offered as the exclusive remedy by the California prevailing wage law. *Id.* at 195-96. Significantly, the Court was unpersuaded by the subcontractor's argument that the awarding body under the contract might retain "the wages and penalties pending the outcome of the suit, *which may last several years.*" *Id.* at 197 (emphasis added) (internal quotation marks and citation omitted). A "lawsuit of that duration," the Court held,

> while undoubtedly something of a hardship, cannot be said to deprive [the subcontractor] of its claim for payment under the contract. Lawsuits are not known for expeditiously resolving claims, and the standard practice in breach-of-contract suits is to award damages, if appropriate, only at the conclusion of the case.

*Id.*

Essentially, the *Lujan* Court found no due process violation where a breach-of-contract suit against the contracting agency that might "last several years" constituted the sole remedy available to a contractor complaining of an invalid prevailing wage withholding. *See id.* at 197-99. An administrative hearing for a prevailing wage withholding, the Court determined, is not even a constitutional requirement. A breach-of-contract suit serving as the only avenue to relief was sufficient to satisfy due process.

In this case, plaintiffs do not dispute the availability of a breach-of-contract suit: it was through such a suit, one of

four similar ones filed in state court, that they obtained a favorable New York state court judgment in June 2012. (Am. Compl., Ex. A.) Under *Lujan*, the availability of a contract-based suit precludes a due process claim grounded in a purportedly delayed hearing. Finding a procedural due process violation for the Staten Island Project hearing — which is already underway (Am. Compl. at ¶ 37) — would require the court to depart from *Lujan*.

Plaintiffs' attempt to distinguish *Lujan* is unavailing. Plaintiffs reason that California's prevailing wage law "did not provide for any post-deprivation hearing and thus, unlike here, there was no issue with any excessive delay in conducting a post-deprivation hearing." (Pl. Opp'n to DOL at 22.) In other words, plaintiffs claim that delaying a hearing inflicts a greater due process violation than offering no hearing at all. Such an argument must be rejected.[15]

---

[15] *Lujan* also forecloses plaintiffs' argument that the withholding constituted a "quasi-criminal" penalty justifying a speedy resolution of the DOL proceedings against them. (Pl. Opp'n to DOL at 20-21; Pl. Opp'n to DASNY at 20-21; Am. Compl. at ¶ 40.) *Lujan* dealt with a withholding no more punitive than the one at issue here. *See Lujan*, 532 U.S. at 191 ("At the time relevant here, if workers were not paid the prevailing wage, the contractor was required to pay each worker the difference between the prevailing wage and the wages paid, *in addition to forfeiting a penalty to the State*." (emphasis added)); *id.* at 193 (noting that the disputed California labor body withholding constituted both "wages and penalties forfeited due to [the subcontractor's] violations"). The *Lujan* court found no due process violation where California law did not even permit a hearing to address withholdings, some of which constituted penalties similar to the ones at issue in this case. This court cannot, therefore, conclude that the plaintiffs in the instant case are not only entitled to such a hearing on the basis of the punitive nature of the withholding, but entitled to a prompt one. By the same token, *Lujan* forecloses plaintiffs' argument that they were entitled

### 3. __Availability of State Remedies__

Finally, the Second Circuit has consistently looked to the full range of remedies available under state law to evaluate whether a plaintiff was denied due process because of a delay. *See Orange Lake Assocs., Inc. v. Kirkpatrick*, 21 F.3d 1214, 1221, 1224 (2d Cir. 1994) (stating that zoning board's delay did not violate due process because, inter alia, Article 78 procedure constituted adequate process); *see also C.C.S.com USA, Inc. v. Gerhauser*, 518 F. App'x 1, 3-4 (2d Cir. 2013) (finding that plaintiff who "never inquired into the status of its application or pursued an Article 78 hearing to compel" a decision from a local entity could not demonstrate denial of due process based on delay); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 888 (2d Cir. 1987) (holding that "adequate state procedures" such as a New York State Article 78 proceeding, were "sufficient to protect [plaintiffs'] claimed property interest").

In *Diamond D*, 282 F.3d at 194-97, the Second Circuit evaluated the claim of a New York road construction contractor who had sued the DOL and government officials, alleging due process violations arising from a prevailing wage withholding claimed to be retaliatory and improper. Although the court's ruling reversed

---

to a hearing for the February 2007 records withholding. Where there is no hearing right for a direct prevailing wage withholding, there is no basis to find that a withholding based on a record-keeping requirement designed to ensure compliance with the prevailing wage law would establish a hearing entitlement.

a district court's injunction on *Younger* abstention grounds, the court discussed the contractor's arguments about a delayed DOL hearing in detail:

> It is significant that to the extent that the DOL was dragging its feet, [the contractor] was free to file a mandamus proceeding in the Appellate Division to compel the DOL to provide expeditious post-deprivation review as required by the prevailing wage law. Indeed, the district court specifically noted that, '[j]udicial review was available because [the contractor] could have gone to the State courts at any time during the pendency of the DOL investigation and sought a writ of mandamus . . . .' Again, where such state remedies are available, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

*Id.* at 202 (internal quotation marks and citations omitted).

In this case, plaintiffs do not dispute the availability of mandamus proceedings to compel a DOL investigation. Nor do they allege that they brought such a petition. Plaintiffs respond that the court should not "countenance the defendants' attempt to shift this burden to plaintiffs and blame plaintiffs for their own failures. It should not be a viable defense to a constitutional due process claim that the person whose rights were violated did not proactively and at his own expense file an a priori lawsuit to ask a court to tell the state agency that violated his rights to not do so." (Pl. Opp'n to DASNY at 23.) Although the court is sympathetic to plaintiffs' argument, the Second Circuit, as discussed above, has consistently determined that the availability of mandamus relief and Article 78 proceedings counsel against the

finding of a due process violation. *See Rivera-Powell v. New York City Bd. Of Elections*, 470 F.3d 458, 467 n.9 (2d. Cir. 2006) ("Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity." (internal quotation marks, citation, and alteration omitted)); *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 168-69 (2d Cir. 2001) (noting "the availability of Article 78 procedures, which can be invoked *before* actual prejudice arises"); *Gerhauser*, 518 F. App'x at 3-4. Further, the Second Circuit has effectively said as much in the very context at issue here: a delayed § 220 hearing concerning a prevailing wage withholding. *See Diamond D*, 282 F.3d at 202 (noting that a public contractor complaining of delayed § 220 hearing was "free to file a mandamus proceeding" to compel the hearing).

The DOL administrative process was commenced and remains ongoing. (Am. Compl. at ¶ 37; *see also* ECF No. 85.) When it is concluded, plaintiffs will be free to challenge the decision in an Article 78 proceeding. *See* § 220(8) ("[A]ny party aggrieved [by the final administrative order] may commence a proceeding for the review thereof pursuant to article seventy-eight of the civil practice law . . . ."); § 220-b(2)(e); *Astoria Gen.*, 2016 WL 369237, at *8 ("Pursuant to §§ 220 and 220-b, an Article 78

proceeding constitutes an aggrieved party's method of reviewing [a DOL] order . . . .").

In light of the precedent finding no due process violation based on the delay of a § 220 hearing in similar circumstances; the *Lujan* Court's affirmance of a prevailing wage law that permitted no administrative hearing upon a withholding; and the availability of state remedies, the court concludes that plaintiffs' right to procedural due process with respect to the timing of the Staten Island Project hearing has been satisfied in this case.

### 4. <u>Bias</u>

Although the delayed Staten Island Project withholding hearing is at the center of plaintiffs' procedural due process claim, the Amended Complaint appears to allege a claim of bias on the part of the administrative decisionmaker that sounds in procedural due process. *See* Martin H. Redish & Lawrence C. Marshall, *Adjudicatory Independence and the Values of Procedural Due Process*, 95 Yale L.J. 455, 477 (1986) ("[T]he use of an 'independent' adjudicator is a *sine qua non* of procedural due process.").

First, the Amended Complaint alleges in conclusory language that, because of the "illicit arrangement" between DASNY and DOL,

> the hearing being conducted by DOL against TADCO and Mr.
> DeMartino is a mere sham. This illicit arrangement and
> DASNY's active tampering necessarily tainted the
> entirety of the proceedings. From the inception of the
> investigation to the hearing, from the investigator Mr.
> Padula to the hearing officer Mr. Scott, the entire DOL
> process is biased against and predisposed to find TADCO
> and Mr. DeMartino guilty of the charges against them.

(Am. Compl. at ¶ 78; *see also id.* at ¶ 38 (containing practically analogous allegations).) Plaintiffs do not directly argue in their briefing that the hearing officer was biased, and similarly do not cite to any facts or legal authority to support this claim.

Aside from the statement above, the only other substantive mention of Scott in the Amended Complaint identifies him as the hearing officer handling the adjudication of the Staten Island Project withholdings. (Am. Compl. at ¶ 37.) Plaintiffs allege no other facts implicating Scott in the purported conspiracy between DASNY and DOL. There is no allegation of a pecuniary interest in the outcome or a personal animosity toward plaintiffs that would deprive Scott of the presumption of impartiality. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) ("The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators . . . ."). Conclusory allegations of bias like those at issue in the above-quoted

allegations cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)).[16] For the foregoing reasons, defendants' motions to dismiss plaintiffs' procedural due process claims are granted.

C.    *Substantive Due Process Under § 1983*

Plaintiffs next claim a violation of their substantive due process rights. The Due Process Clause of the Fourteenth Amendment has not been limited to ensuring adequate procedures, but has instead been read to "cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks and citations omitted); *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 197 (1979) ("[T]he Due Process Clause of the Fourteenth Amendment not only accords procedural safeguards to protected interests, but likewise protects substantive aspects of liberty

---

[16] Further, allegations of bias or impropriety in state administrative proceedings are "properly brought in an Article 78 proceeding and not in federal court." *Leary v. Civil Serv. Emps. Ass'n*, No. 11-CV-716, 2012 WL 1622611, at *8 (S.D.N.Y. May 9, 2012), *aff'd sub nom. Leary v. Civil Serv. Empls. Ass'n Region 3*, 516 F. App'x 42 (2d Cir. 2013); *see also Verri v. Nanna*, 20 F.Supp.2d 616, 623 (S.D.N.Y. 1998) (holding that due process claim premised on bias failed because "plaintiff could have assured that he had not been pre-judged nor terminated for inappropriate reasons" by seeking "timely, independent review" of administrative decision in Article 78 proceeding).

against impermissible governmental restrictions." (citation omitted)).[17]

The standard for a substantive due process violation is difficult to meet: executive action only violates substantive due process rights when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (internal quotation marks and citation omitted); *see also Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (noting that the Fourteenth Amendment is not a "font of tort law" and that substantive due process "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable" (internal quotation marks and citation omitted)); *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (explaining that the Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended"). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Lombardi v.*

---

[17] Although the Second Circuit has held that a constitutional claim based on a public contract right would "normally permit inquiry concerning only procedural regularity in connection with nonperformance, rather than the merits of the claim of contract breach," the court explained that "*rare cases might be imagined* where denial of a contract right, if deemed to be Fourteenth Amendment property, would violate substantive due process." *S & D Maintenance*, 844 F.2d at 966 & n.4 (emphasis added).

*Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks and citation omitted). The difficulty of stating a claim for a substantive due process standard is illustrated by *Lewis*, which held that the parents of a motorcycle passenger killed in a high-speed chase by an allegedly deliberately indifferent police officer could not state a § 1983 claim under the doctrine. *See* 523 U.S. at 840, 855.

Courts have, on multiple occasions, dismissed substantive due process claims grounded on purportedly abusive § 220 investigations. In *CNP Mechanical Inc. v. Alund*, for example, a plumbing contractor-plaintiff alleged that the DOL colluded with unions to drive up the prevailing wage and devise "false claims that [the contractor] had improperly failed to pay its employees"; instigated "either fraudulent or baseless" claims against the contractor; and intended to cause the contractor "to be disqualified from obtaining new public work contracts." No. 04-CV-6593, 2007 WL 3565587, at *1-2 (W.D.N.Y. Nov. 15, 2007). The court dismissed the contractor's substantive due process claim. *Id.* at *5. Similarly, in *Astoria General Contracting*, a plaintiff-contractor for the New York City Department of Education alleged that a prevailing wage investigation was the product of collusion between the contracting agency and the city comptroller's office. *See* 2016 WL 369237, at *6. The contractor alleged that the contracting agency helped to manufacture employee wage complaints

57

in exchange for cash, and that the agency did so in part because of the dismissal of an earlier prevailing wage complaint. *See id.* at *3. The court expressed severe skepticism about the viability of a substantive due process claim stemming from these allegations, concluding that it was "far from clear" that allegations aimed at the investigation itself would shock the conscience and that the other allegations were insufficiently egregious to merit relief. *See id.* at *11.

Finally, in *Leed Industries*, a contractor claimed that a wage withholding on a public works project was issued by the DOL without the contractor ever having received a specific complaint. *See* 2010 WL 882992, at *1. Further, the contractor alleged that the DOL threatened to expand the scope of its investigation if the contractor continued to object to the withholding. *See id.* A DOL investigator suggested that signing a collective bargaining agreement might "resolve the situation" and, when the contractor refused to do so, "began spreading false, slanderous and injurious statements about" the contractor to its clients. *Id.* The court concluded that these were conclusory assertions that could not support a substantive due process claim. *Id.* at *3-4.

Plaintiffs' substantive due process claim is based on the allegedly baseless records withholding on the Queens Hospital Project and the cross-withholding on the Queens Hospital Project to address purported underpayments on the Staten Island Project.

(Am. Compl. at ¶¶ 42-56.) According to plaintiffs' complaint, DASNY and DOL collaborated on the investigation and neither had a basis to believe TADCO had violated prevailing wage laws. (*Id.* at ¶¶ 44, 46-48.) Plaintiffs contend that the investigation "served no legitimate governmental purpose," but instead was designed to retaliate for "lawsuits that TADCO had filed against DASNY, and to intimidate, harass and punish TADCO and Mr. DeMartino." (*Id.* at ¶¶ 50-51.)

Plaintiffs support these allegations in large part by focusing on the timing of the investigation, which began at about the same time as the relationship between DASNY and plaintiffs deteriorated, and after plaintiffs initiated their state court suits. (*See, e.g.*, Am. Compl. at ¶ 17.) They contend that the frivolity of the investigations is underscored by how many years had passed between the purported prevailing wage law violations and the withholdings. (*E.g.*, *id.* at ¶¶ 34-37.) Plaintiffs also claim that DASNY employee Monahan surveilled DeMartino and threatened him. (*Id.* at ¶ 23.)

Ultimately, plaintiffs cannot meet the high standard required to state a plausible claim for a substantive due process violation. First, as to the initial records withholding on the Queens Hospital Project in February 2007, and as noted in the court's procedural due process analysis, *see supra* Discussion, Part IV.B, plaintiffs had a statutory obligation at all times to

keep adequate payroll records and provide the records to the DOL.
§ 220(3-a)(a)(iii), (c). Moreover, the prevailing wage law states
that the DOL *must* release a records withholding if a contractor
provides adequate records. *See* § 220(3-a)(c). Plaintiffs never
contend in their complaint that they provided payroll records.[18]
Even if the investigation leading to that records withholding was
baseless, plaintiffs could have avoided any withholding if they
simply turned over the records. Their apparent failure to do so
indicates, instead, that the records withholding may have been
justified. *See Twombly*, 550 U.S. at 557 (discussing the "need at
the pleading stage for allegations plausibly suggesting (not
merely consistent with)" liability).

Further, plaintiffs contend that the DOL's February 2007
Staten Island Project withholding was issued in retaliation for
the January 2007 lawsuit. This theory is implausible in part
because the DOL — which issued the February 2007 withholding — was
not a party to any of the January 2007 lawsuits. (Am. Compl. at

---

[18] Plaintiffs appear to contend that the DOL obtained the records from
DASNY. (*See* Am. Compl. at ¶ 26.) However, a public contracting agency's
record-keeping obligations are distinct from a public contractor's.
*Compare* § 220(3-a)(a)(iv) (contracting agency's requirements), *with*
§ 220(3-a)(c) (contractor's requirements). The statutory provision
addressing records withholding provides that the contractor must respond
to the records request directly. *See* § 220(3-a)(c) ("The fiscal officer
may require any person or corporation performing such public work to
file with the fiscal officer within ten days of receipt of said request,
payroll records, sworn to as to their validity and accuracy . . . ."). 
Even if DASNY provided plaintiffs' payroll records to the DOL, that would
be insufficient under § 220(3-a)(c) to require release of the records
withholding.

¶¶ 13-14 & n.1; *id.*, Ex. A.) The Amended Complaint in this action does not clarify why the DOL, which is the only party in this case with the authority to issue a prevailing wage withholding, would retaliate against TADCO and DeMartino for a suit that did not even name the DOL as a party. Plaintiffs contend that DASNY effectively exercised control over the DOL because Padula — the DOL investigator embedded with DASNY — was being paid out of DASNY's pocket pursuant to a contractual arrangement between DOL and DASNY. (Ha Decl., Ex. E; *see also* Am. Compl. at ¶ 19.). None of the notices of withholding incorporated by reference in the Amended Complaint, however, were signed by Padula. (*See* Ha Decl., Exs. G, L-M.) Even if DASNY controlled Padula, there are no allegations — let alone plausible ones — that DASNY effectively controlled the three independent investigators who signed the February 2007 withholding as well as the other two withholdings. (*Id.*)

The other challenged withholding on the substantive due process issue is the May 2013 cross-withholding that affected the Queens Hospital Project contract earnings. First, as the court just explained, there is arguably a break in the causal chain alleged by plaintiffs based on the signatures of independent and unimplicated DOL investigators. There is, however, a more fundamental problem with plaintiffs' challenge to the May 2013 cross-withholding. The legitimacy of the May 2013 cross-withholding (which affected Queens Hospital Project funds) is a

function of the legitimacy of the February 2010 direct underpayment withholding on the Staten Island Project because the cross-withholding was issued to cover alleged prevailing wage violations on the Staten Island Project. With the substantive – as opposed to procedural – legitimacy of the February 2010 underpayment withholding standing unchallenged, the court cannot find that the May 2013 cross-withholding violated plaintiffs' substantive due process rights.

Additionally, none of the allegations in this case rise near the level of the substantive due process complaints raised and either seriously questioned or directly rejected by the courts in *CNP Mechanical*, *Astoria General*, and *Leed Industries*. *See CNP Mechanical*, 2007 WL 3565587, at *1-2 (allegations that DOL instigated "fraudulent or baseless" claims against the contractor); *Astoria Gen.*, 2016 WL 369237, at *3, *6, *11 (allegations that contracting agency with retaliatory motive colluded with contractor to manufacture wage complaints); *Leed Indus.*, 2010 WL 882992, at *1 (allegations that, inter alia, DOL threatened to expand baseless investigation's scope if contractor continued to object to withholding).

Plaintiffs' allegations concerning the initiation of retaliatory and baseless investigations parallel those raised in the above-cited cases. They do not "shock the conscience" by displaying official conduct "truly brutal and offensive to human

dignity." *Lombardi*, 485 F.3d at 81 (internal quotation marks and citation omitted). Far from it. These allegations do not achieve the level of plausibility necessary to overcome a motion to dismiss. The plaintiffs' conclusory allegations cannot plausibly state a due process violation, especially where plaintiffs have failed to adequately allege that the DOL and DASNY were acting contrary to New York's prevailing wage law, *see* § 220, and the more fundamental New York constitutional requirement to pay the prevailing wage. *See* N.Y. Const. art. I, § 17; *Leed Indus.*, 2010 WL 882992, at *2 ("Not only are [the contractor's] allegations wholly conclusory, but none of DOL's alleged conduct suggests bad faith, since [the DOL] is simply exercising its statutory authority to investigate a contractor's alleged failure to pay the prevailing wage." (citations omitted)); *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Plaintiffs do not analogize this case directly to any similar set of facts where a court granted relief on a substantive due process theory. They cite almost exclusively to broad language from *Lewis*, 523 U.S. at 846-47. (*See* Pl. Opp'n to DOL at 12; Pl. Opp'n to DASNY at 14.) *Lewis*, as discussed above, *rejected* the

substantive due process claim (on a motion to dismiss) of the family of a motorcycle passenger who was killed in a high-speed chase by a purportedly recklessly indifferent police officer, who "skidded into [the passenger] at 40 miles an hour, propelling him some 70 feet down the road and inflicting massive injuries." 523 U.S. at 837. *Lewis* defines the strict limits of modern substantive due process doctrine: official conduct objectively more shocking, egregious, and outrageous than the conduct implicated in this case — official conduct that resulted in a death — was found insufficient to state a claim. The allegations of intentionality underlying the claim in this case do not serve meaningfully to distinguish *Lewis*, and plaintiffs do not argue otherwise. Defendants' motions to dismiss plaintiffs' substantive due process claim is granted.

   D.   *Abuse of Process Under § 1983*

       Plaintiffs next allege a malicious abuse of process claim against all defendants. "In order to state a claim for abuse of process under New York common law, a plaintiff must allege (1) use of a regularly issued legal process, either civil or criminal (2) with the intent to do harm without excuse or justification and (3) the use of process in a 'perverted manner' to obtain a collateral objective." *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11-CV-3327, 2013 WL 417406, at *15 (S.D.N.Y. Feb. 4, 2013); *see also Cook v. Sheldon*, 41 F.3d 73, 80

(2d Cir. 1994) (same); *Curiano v. Suozzi*, 469 N.E.2d 1324 (N.Y. 1984) (same).[19]

Plaintiff's complaint characterizes the abuse of process claim as arising under § 1983, not under state law. (Am. Compl. at ¶¶ 81-89; *see id.* at ¶ 81 (characterizing fourth cause of action as an "Abuse Of Process Under The Fifth And Fourteenth Amendments And 42 U.S.C. § 1983").) Although a cause of action might exist for abuse of civil process under New York state law, *see Curiano*, 469 N.E.2d at 1326 (providing that the challenged "regularly issued process" may be "either civil or criminal"), plaintiffs face an insurmountable obstacle under its § 1983 analogue because of the civil — as opposed to criminal — nature of the alleged abuse of process.[20] *See Cook*, 41 F.3d at 79 ("[S]tate law torts committed by state officials do not always rise to [the] level of constitutional violation." (citation omitted)).

---

[19] State law provides the elements of an abuse of process claim under § 1983. *See generally Wilson v. Garcia*, 471 U.S. 261, 277 (1985) (recognizing that state law is authoritative source of elements of § 1983 action), *superseded on other grounds by* 28 U.S.C. § 1658; *Del Col v. Rice*, No. 11-CV-5138, 2012 WL 6589839, at *9 n.12 (E.D.N.Y. Dec. 18, 2012) ("The federal courts look to state law to define the elements of abuse of process . . . .").

[20] Although § 220, the prevailing wage law at issue, does provide for criminal penalties in certain contexts, *see, e.g.*, § 220(3)(d)(i)(1)–(4) (providing for gradations of criminal liability, including felony liability, for certain willful failures to pay prevailing wage), there is no indication in the Amended Complaint that criminal penalties were at issue in this case. Further, plaintiffs' briefing on this issue — which consists of approximately two pages, and most of which simply quotes directly from the Amended Complaint (*see* Pl. Opp'n to DASNY at 27-28; Pl. Opp'n to DOL at 24) — nowhere proposes that the purported abuse of process in this case involved any criminal proceedings.

The Second Circuit has permitted § 1983 claims predicated on malicious prosecution or abuse of process in the criminal context, but it has foreclosed § 1983 claims grounded on an abuse of civil process. *See Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) ("[Plaintiff] was subject only to civil, not criminal, liability. Therefore, any abuse would have been malicious abuse of process rather than malicious prosecution. While section 1983 liability may be predicated on a claim for malicious prosecution, it may not be predicated on a claim for malicious abuse of process." (citations omitted)); *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) ("[S]ection 1983 liability . . . may not be predicated on a claim of malicious abuse of . . . civil process . . . ." (internal quotation marks and citation omitted)); *cf. Cook*, 41 F.3d at 80 ("The distinction between civil and criminal abuse of process is critical for section 1983 purposes."). Accordingly, plaintiffs' claim under § 1983 for an abuse of civil process must be dismissed.

E.   *Conspiracy Under § 1983*

Defendants also move to dismiss plaintiffs' § 1983 conspiracy claim. (Am. Compl. at ¶ 73-80; DOL Mem. at 21-26; DASNY Mem. at 23-25.) To state a § 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done

in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Chen v. City of New York*, 622 F. App'x 66, 67 (2d Cir. 2015) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)) (providing elements).

Although a plaintiff may assert a civil conspiracy claim under § 1983 for the deprivation of a constitutional right, he must first show a violation of the underlying constitutional right. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Stated otherwise, "a civil conspiracy claim 'does not set forth an independent cause of action' but rather is 'sustainable only after an underlying . . . claim has been established.'" *Clark v. City of Oswego*, No. 03-CV-202, 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) (alteration omitted) (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1413 n. 7 (D.C. Cir. 1984)); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), *as amended* (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("We note at the outset that conspiracy is not an independent basis of liability in § 1983 actions."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("Having dismissed Plaintiff's § 1983 substantive claim, his related conspiracy claim must also be dismissed. A Section 1983 conspiracy

claim against private individuals will stand 'only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.'" (quoting *Singer*, 63 F.3d at 119)).

As discussed throughout this opinion, plaintiffs have failed adequately to plead the violation of any underlying federal constitutional right. *See supra* Discussion, Part IV; *see also infra* Discussion, Part V (dismissing claim for damages under New York State Constitution). Without a viable underlying constitutional violation, plaintiff's conspiracy claim must be dismissed. *See Droz*, 580 F.3d at 109; *Singer*, 63 F.3d at 119-20; *see also Gomez*, 550 F.3d at 617 ("[C]onspiracy is not an independent basis of liability in § 1983 actions.").

## V. <u>New York Constitutional Claim</u>

Plaintiffs also allege a due process violation under Article I, § 6 of the New York State Constitution, which provides, as relevant here: "No person shall be deprived of life, liberty or property without due process of law."

This language, of course, tracks the language in both the Fifth and Fourteenth Amendments to the U.S. Constitution. The due process guarantees of the New York Constitution have been interpreted by New York courts generally to be coextensive with federal due process protections. *See Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011) ("With some exceptions, New York courts have interpreted the due-process

guarantees of the New York Constitution and the United States Constitution to be coextensive — or assumed that they are."); *Spring v. Allegany-Limestone Cent. Sch. Dist.*, No. 14-CV-476, 2015 WL 5793600, at *9 (W.D.N.Y. Sept. 30, 2015) ("In the absence of a clear ruling that a different standard is to be applied, New York courts generally interpret the due-process guarantees of the New York Constitution and the United States Constitution as coextensive." (citations omitted)); *Hernandez v. Robles*, 855 N.E.2d 1, 14 (N.Y. 2006) (Graffeo, J., concurring) ("Although our Court has interpreted the New York Due Process Clause more broadly than its federal counterpart on a few occasions, all of those cases involved the rights of criminal defendants, prisoners or pretrial detainees, or other confined individuals."), abro*gated by Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

Plaintiffs do not provide any reason why the court should apply a different due process analysis under the New York Constitution. Nowhere in their briefing do they submit that due process protections under the New York Constitution, as relevant here, exceed the protections available under the Due Process Clause of the Fourteenth Amendment. Instead, they appear to concede that the protections are the same. (*See* Pl. Opp'n to DOL at 23 n. 7.) Accordingly, because plaintiffs could not state a claim for a due process violation under the federal constitution, their claims under the New York Constitution cannot succeed.

## CONCLUSION

The court concludes that plaintiffs' claims cannot survive defendants' motions to dismiss. The court finds that plaintiffs' motion for recusal is meritless and it is denied. The court also concludes that *Younger* abstention precludes the court from issuing injunctive relief on the Amended Complaint. In addition, the court finds that plaintiffs' federal procedural due process, substantive due process, abuse of process, and conspiracy claims seeking damages fail. Finally, the court finds that plaintiffs' due process claim under the New York State Constitution must be dismissed.

For the foregoing reasons, the Amended Complaint is dismissed in its entirety. Because plaintiffs have already had one opportunity to amend their complaint, and because any amendment would be futile, the court will not grant leave to amend. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991) ("[W]here a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend."). The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close this case.

**SO ORDERED.**

Dated:    March 1, 2016
          Brooklyn, New York

                                    _____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge